The first case is Pacific Employers Insurance Company versus St. Francis Travelers and Evanston. Thank you. Good morning, Your Honors. May it please the court, John Hacker for Pacific or PEIC. This case, as you know, raises two basic questions. One is which insurer or insurers must pay the hospital's cost of settling the Reardon molestation claims. And the second is which insurer or insurers must pay the cost of defending the hospital against the Reardon claims. Has anyone ever asked either of the two judges who decided this case before to make that allocation? Did anyone ever ask? Are you talking about the defense cost allocation? Yeah. Or indemnity allocation. Yes. I'm going to address mainly indemnification, but the defense cost allocation, to address it briefly, we were not seeking an allocation of defense cost because we didn't believe an allocation as between insurers was appropriate. Now you do, don't you? We don't. Because, yes, our submission is consistent with the hospital's, which I believe Mr. Tucker will be addressing at greater length, but it's that the defense cost arises under the general liability duty of the traveler's under that, and the hospital's entitled to a defense under the general liability provision coverage. Only GL, not the HPL? It arises under both provisions, but because it arises under the GL, the hospital is entitled to an entire defense in the entire case under the GL coverage. That's what a purchase, when you look at the GL coverage, what it gets is both indemnification for GL liability, but also a defense against any claim that asserts GL, you know, could potentially result in GL liability. That's what the GL defense coverage is, an entitlement to a defense for the entire case. So that's what they get. The fact that they also had additional coverage under the HPL provision with additional defense obligations for HPL doesn't somehow backdoor, undermine, or reduce the GL coverage they were entitled to. That's coverage they get. Is that coverage stacked? I'm sorry? Is the coverage stacked? No, there's a non-concurrency clause that prevents stacking of indemnification, but not of defense cost. By terms, by its terms, it applies only to injury, but also the logic applies to entitle the hospital to a complete defense for any claim asserting GL coverage. On its face, when the complaint is filed, nobody in this courtroom or anyone else has any idea whether at the end of the case you're going to result in a claim that's only GL or a claim that's only HPL. You can only have one of the two. But at the beginning of the case, you don't know. And because you don't know, because there's a potential it could end with GL-only liability, the hospital is entitled to a defense, an entire defense for the entire case under the GL coverage. You're arguing this as if we were the court to decide all of this. You're here on appeal from judgments that dealt with a request for four declarations or three declarations, there's a variation on this, and the judges who heard these cases granted or denied some of them. What do you want to appeal from? So what we're appealing, we agree that Judge Kravitz, as to indemnification— I understood. So you agree with indemnification. With Judge Kravitz. We disagree with what Judge Underhill did. Judge Underhill misunderstood the complaints. Judge Kravitz correctly understood, as to indemnification, that the requests for a declaration were necessarily seeking a declaration based on the facts of the underlying cases. That's why we didn't move for summary judgment. There was no categorical ruling requested. And I'm sorry to be persnickety about this, but your count three asked for a declaration that the insured defendants owed a duty to defend. Correct. General liability policies. That was granted. That's right. That was granted. Absolutely. Now, Judge Underhill didn't alter that part of the judgment. He then went on to counts one and two. So from your perspective, there's no need for us to take any action with respect to the judgment on count three. I think that's right. We agree with that. So now tell us what you think is error with respect to either counts one or counts two. With respect to both counts one and two, to be very specific, we believe Judge Underhill erred in rejecting those counts by misreading them as seeking only categorical declarations that could be made as a matter of law. Every time he referred to them, he kept inserting the phrase, as a matter of law, which wasn't in the complaint. And that's not what we sought. And we know, you can tell we didn't seek it because we didn't move for summary judgment on those counts. You're doing it on a motion before trial. So it was as a matter of law. It was committed to his sound discretion. With respect, Your Honor, that's not quite accurate. We only moved on count three for summary judgment as a matter of law. It wasn't a motion. It was a complaint seeking declarations, which require facts. That happens all the time. A declaration can come up after fact-finding. What about counts one and two? You moved those? Why is it not a matter of law? What am I missing? What I think you're missing with respect, Your Honor, is we did not move on counts one and two. Without a complaint, Judge Kravitz understood that to resolve the complaint and enter any declarations of any kind, there's going to have to be fact-finding. The other side, right, the other side moved for summary judgment on counts one and two on an incorrect theory that even Judge Underhill didn't accept. And I can talk about their theory, but the first thing we have to deal with is Judge Underhill's theory for why the other side was entitled to judgment that we weren't seeking any kind of judgment on counts one or two as a matter of law. The other side, what Judge Underhill said, is counts one and two were seeking, could only be read as seeking broad, categorical declarations as a matter of law. Judge Kravitz rejected that. ...was a declaration that the Reardon litigation against St. Francis does not implicate HPL coverage. And that was because it sought to recover for injuries resulting from sexual misconduct, not for injury of medical treatment or medical incident. Judge Underhill pointed to record evidence that he thought could be construed to seek relief for medical treatment or medical incident and therefore entered the judgment. Now tell us what was wrong about that. What was wrong was not the latter part. That was true. What was wrong is construing the declaration as only seeking a categorical ruling applicable across the entire case. That's not what we were seeking. Judge Kravitz understood we weren't seeking it. Judge Kravitz, and that's why we did not move for summary judgment. What we were seeking, it's worded broadly, but the fact that a plaintiff, being the master of his complaint under Rule 8... But how is Judge Underhill wrong in saying, I can't give you relief that says it does not implicate because there's a way of looking at these claims that it does implicate. I mean, what is wrong about his decision? What's wrong is thinking that he can only answer the question in a binary yes-no categorical way. Some claims... That's how the count is drafted. That it does not... Count 1 does not implicate HPL and Count 2 does implicate GL. Categorically. It's written broadly, but that doesn't limit the court to only providing a broad answer. Declarations are written broadly all the time. It's notice pleading, remember. It's Rule 8. You just have to give notices to what you're talking about, and Judge Kravitz completely understood. All sides... This is not an argument the other side made in the summary judgment briefing. They didn't come in and say, you have to read this categorically. They had a different, incorrect theory. Judge Underhill made this up without notice to anybody and said, I can only give a broad answer when, in fact, Judge Kravitz and the parties were prepared to enter into discovery so that you could answer on a claim by claim basis. You had to understand what a given claim was. Is your argument that under Rule 56 you should have had notice that he was going to hand down or consider the issue that he has decided you didn't have notice and therefore you wanted to go back so that you do have notice and you can argue about it? We haven't raised a procedural argument that way. My point, though, is similar. You have not raised the procedural argument that way. That's correct, but it's wrong because what he did was not what anybody asked for. We couldn't have anticipated, and we do have the procedural argument, which I guess maybe I should amend my answer slightly. We do have the procedural argument that if, in fact, the complaints could have been, the declarations could have been drawn more narrowly to say on a claim by, all you have to say is on a claim by claim basis, on a settlement by settlement basis, does it implicate HPL or GL coverage, then he should have been allowed leave to amend. Judge Underhill takes the position that you never, never urged that and therefore was not prepared to hear you on that. I mean, you just said, well, Judge Kravitz understood it, but that was before discovery. Now, by the time it came to Judge Underhill, discovery had been conducted, your adversary had moved for summary judgment, now the question was, did you adduce evidence that would have allowed you to secure the declaration you urged? And Judge Underhill said, not the one you urged. I think you're mixing a couple of things. What Judge Underhill said was that we had not requested an allocation of defense costs, and that's true, because count three sought a categorical declaration. That's absolutely right, because that's what we're entitled to, because you can just figure it out in the face of the complaint. We did not move for and seek and never requested, excuse me, we did request specific fact discovery on indemnification, and it's not correct that there had been discovery on indemnification. The parties were preparing discovery plans, and then it was stayed and suspended when, after Judge Kravitz passed and was turned over to Judge Underhill, and there's going to be some discussion about what the rules going forward were going to be about understanding the relationship between HPL and Connecticut law. The parties, it's all in the record, there's email exchanges you can look at, where the parties agree to suspend the discovery, pending disposition of those, on precisely this point. On what, these are the facts that we didn't have, according to Judge Kravitz, and he's absolutely right. The facts we didn't have were, what were the basis for the settlements of the underlying reared in litigation? Nobody knows. From this record, somebody may in the world, but nobody knows if a given claimant who settled their claim and got a given amount of money, what the basis for the claim was or the settlement was. Were the facts of that particular case, did they involve medical care at all? Did they involve security? A failure of security, and therefore would not be implicating HPL. Nobody knows any of those facts. The defense cost might have been attributable to the HPL policy, isn't that correct? No, the defense cost would all arise under the GL provision, because that's what they're entitled to, is a GL defense against any, that's what the GL defense is, is a right of the hospital to a defense against any complaint that could result in GL liability, even if it doesn't. It results in no liability. Are they entitled to a defense there too? They're entitled to a defense under the HPL, but that fact doesn't, what the other side is saying is the fact they're entitled to a defense under the HPL makes the GL coverage, defense coverage disappear. And you don't get any GL defense coverage. And that just makes no sense at all. If you get GL coverage, you get GL coverage for the whole case until the end of the case. And then whatever happens, happens. There could be no liability, you still have your GL coverage, or the liability could result in... That's what they're arguing. But we'll hear from all the parties. I think they're arguing that these costs can be allocated depending on whether it's GL or HPL, even as to defense costs. And I agree, you'll hear from them. I think their primary submission is that because it implicates HPL, that's the coverage you get. But even if their argument is then allocation, that was the point Judge Kravitz inserted in the case, that's incorrect because there's no basis under Connecticut law for allocating between HPL and GL after the case is over. The only way to apportion is a slightly more technically sound word. The only way to apportion after a case is over, the only rule of Connecticut law that allows that is when you have claims that are covered and not covered at all. That's a situation in which you can apportion. But if you've purchased GL coverage, you're entitled to your GL coverage, a defense for the whole case until it's over. All right, you've reserved three minutes for rebuttal. We'll hear first from St. Francis or Traveller, whichever order anyone wants. I am absolutely neutral. Whoever's going to take the podium, take it. Thank you, Your Honors. Good morning, and may it please the Court. I'm Seth Tucker from Covington & Burling, representing St. Francis. St. Francis didn't get all their defense cost pays, did they? We did not, despite having two lines of insurance that should be paying for defense. We just heard counsel say that you're entitled to all your costs under your GL policy. We believe that's correct. We believe that's correct because... How come you didn't get it? What did they say when you asked for it? What did the insurers say? Well, Traveller said, we only pay under the HPL, and we've paid our limit. You're done. And PEIC said, but as the District Court has held and, in fact, as Traveller has now conceded on appeal, the lawsuits against St. Francis implicate the general liability coverage. So we're stuck between two insurance companies that each point the finger at each other, and what we have submitted is that we have an entitlement under Connecticut law to have the defense cost paid under the general liability coverage because we have a grant of coverage. It is incumbent on the insurer under black letter Connecticut law that if it wants to limit the operation of an insurance policy, it has to spell that out clearly, and it didn't do so. On this appeal, Traveller's has limited its argument to one provision in the policy, what they've called the non-concurrency clause, which says that the HPL is the only part that applies to injury that arises out of the specified professional services. But as Mr. Hacker pointed out, and this is an old, old distinction in the law, Learned Hand for this court talked about the distinction between qua claim and injury. That was in the Lee case from 1949. The Connecticut Supreme Court adopted that language from this court, from Judge Hand, in the Missionaries of the Company of Mary case. Interestingly, both involved Traveller's. What we now know as Traveller's was Aetna Casualty Insurity when it was the defendant in those cases denying a duty to defend, and when it wrote the policies for St. Francis. The distinction between the injury and the claim is fundamental. The claims against St. Francis, the lawsuits, as the district court held, both judges held this, and again, Traveller's acknowledges this on appeal. They raise the potential for a claim that is covered only under the general liability. There are multiple allegations of derelictions of duty or breaches of duty, some of which sound in the professional liability, but .